MEADOWS *et al.*, trustees, *v.* BOARD OF EDUCATION OF
PAULDING COUNTY *et al.*

1. The policy of the legislature, as declared in the several enactments relating to the establishment, maintenance, and control of the public schools of a county, is to devolve on the county board of education supervision of the schools and the duty of administering the school law. To that end the county board of education is constituted a special tribunal for hearing and determining any matters of local controversy in the administration of the school law, with a right of appeal to the State school commissioner and the State board of education. Where a county is laid off into school districts under the act of 1906 and a controversy arises as to the location of the school site in a particular district, this controversy is determinable by the special tribunal fixed by law, viz., the county board of education, and a court of equity will not usurp jurisdiction but will remand the parties to their legal remedy.

2. Necessarily the county board of education is vested with some discretion in the administration of the school law, and, where neither district has adopted the provisions of the school law as to local taxation, they may allow pupils in one district to attend a school in an adjoining district where it is more convenient and accessible to them, and appropriate the proportionate share of the public-school fund to which such children are entitled to the support of the school which they actually attend. Their action is not illegal in this respect, and any complaint as to its propriety must be made to the county board of education.

3. The court did not abuse its discretion in refusing a temporary injunction in this case.

APRIL 12, 1911.

Petition for injunction. Before Judge Bell. Paulding superior court. September 16, 1910.

*J. S. James,* for plaintiffs.

*W. E. Spinks* and *J. J. Northcutt,* for defendants.

Evans, P. J. The county of Douglas was laid out into school districts, agreeably to the provisions of the act approved August 21, 1906 (Acts 1906, p. 66). The district in the extreme southeastern corner of the county was called Brownsville district, and the district immediately north of it was known as the Granger district. At the time the county was laid out into school districts there were two schools in operation in the territory embraced in the Brownsville district, known respectively as Bethel and Brownsville schools. These schoolhouses were about one and three-quarter miles apart. The county board of education adopted a resolution proposing to the patrons of the Brownsville school, if they would make such repairs and additions to the schoolhouse as would favorably compare with the one at Bethel, that the school for the Brownsville district would be located at the Brownsville schoolhouse. Certain repairs were made by the patrons of the Brownsville schoolhouse. The board of education appointed a committee to examine these improvements, which committee reported to the board that the repairs were not of such character as made it equal to the accommodations offered by the schoolhouse at Bethel; whereupon the board of education passed a resolution locating the school for the Brownsville district at the Bethel schoolhouse. Certain trustees were elected for the district, and recognized by the board of education as being elected pursuant to the provisions of the McMichael act. The school was opened in the Bethel school district, and some fifteen pupils from the Granger district were allowed to attend this school, and the proportionate part of the school fund to which these children were entitled was allowed to go in support of the Bethel school. Whereupon certain persons, alleging themselves to be the trustees of the Brownsville and Granger districts, and certain patrons of each district, brought their petition against the board of education, the county school commissioner, and certain other patrons of the two districts, praying that the defendants be enjoined from locating the school at Bethel, and from using any part of the fund derivable from the public-school money in support of the school maintained at Bethel. The grounds urged against the location of the school of the Brownsville district

at Bethel were, that the Brownsville schoolhouse was nearer the geographical center of the district, and more accessible to all of the school children in that district; and that on account of the attendance of the pupils from the Granger district upon the Bethel school, and the diversion from the Granger school of the proportionate part of the school fund to which these children were entitled, consequent upon their attendance at the Bethel school, the Granger school was so reduced in numbers that the school could not be maintained all the year without supplemental support from the patrons of the Granger school. The defendants demurred to the petition, on the ground that the plaintiffs had an ample remedy at law, and also answered that they had duly located the Bethel school, with due reference to the geographical center of the district, and with reference to the accessibility of all of the children of that district. They also set up that the pupils of the Granger district were allowed to attend this school because of its convenience to the pupils of the Granger district living within close proximity to the Bethel school. The case came on to be heard on an interlocutory injunction, and the evidence before the judge respecting the main contentions of the parties was conflicting. The court dissolved the temporary restraining order and refused an injunction, and exception is taken to this judgment.

The adoption of the McMichael school law was a forward step in the movement for the development of the common schools of this State. The scheme comprehended two general features; one embraced the location and definition of the school districts, and the administration and government of the schools therein, and the other concerned the method of raising revenue by taxation for the support of the schools. *Dolvin* v. *Lewis,* 131 *Ga.* 29 (61 S. E. 913). It was not the intention of the act of 1906, known as the McMichael act, to repeal the existing laws respecting the administration of the school system, except when in direct conflict. Indeed the act so expressly declares. *Hodges* v. *Talbert,* 135 *Ga.* 253 (69 S. E. 103). The legislative policy, as declared in these enactments respecting the administration of the school law, was to devolve the responsibility for the proper administration of the school law upon the county board of education, so as to give that board ample power to effectually administer the school laws within their jurisdiction. Pursuant to this policy it was enacted that: "The county board of

education shall constitute a tribunal for hearing and determining any matters of local controversy in reference to the construction or administration of the school law, with power to summon witnesses and take testimony, if necessary; and when they have made a decision, said decision shall be binding upon the parties. Either of the parties shall have the right to appeal to the State school commissioner; said appeal shall be made through the county commissioner in writing," etc. Civil Code (1910), § 1485. The tribunal thus provided for is a court of limited jurisdiction, and was designed to determine such controversies as are presented by this case. If the county board has improperly located the school site in the Brownsville district, the complaining parties are afforded a right to be heard before the board sitting as a court; and if that board upon the testimony submitted decides against the complainants, they are given the right of appeal to the State school commissioner and the State board of education, as provided in the act. It is a familiar rule that where a plain and ample legal remedy is given, there is no occasion to resort to equity. If the special tribunal constituted by the legislature for the determination of controversies arising out of the school law acts within its jurisdiction, and not oppressively or arbitrarily, its decision is binding upon the parties. There is no pretense in this case that the board of education, in the location of the school at Bethel, acted either arbitrarily or without the limits of their jurisdiction. That being the case, especially with reference to the location of the school at Bethel, the plaintiffs must pursue the remedy pointed out in the statute.

It will be borne in mind that neither the Granger nor the Brownsville district has adopted the provisions of the McMichael law with reference to the support of schools by local taxation. Therefore there can be no complaint that the money of any taxpayer is being diverted to pay for the support of the school. The specific complaint is that the board of education, by allowing the pupils in the Granger district to thus cross the line to attend the Bethel school, is giving to the Bethel school the proportionate part of the school fund to which these children from the Granger district are entitled; and as a result the attendance in the Granger district is reduced, and the amount derivable from the public-school money is to that extent diminished, which requires an increased supplemental support to the common-school fund to run the Granger

school during the entire year, or for a greater period than would be authorized by the funds obtained solely from the public-school money. There is nothing in the various provisions of the school laws which prohibits this course. *Clark* v. *Cline,* 123 *Ga.* 856 (51 S. E. 617). Necessarily the control and management of the public schools must be left largely to the discretion of the county board of education; and when this discretion is exercised within the limits of their jurisdiction, there is no ground for complaint: The denial of the temporary injunction was clearly within the discretion of the judge, and his judgment is    *Affirmed. All the Justices concur.*